**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TOPTAL, LLC,

                    *Plaintiff,*

        v.

ANDELA INC., et al.,

                    *Defendants.*

Civ. Case No.: 1:24-cv-04027
(JHR) (JW)
Hon. Jennifer H. Rearden

**PLAINTIFF TOPTAL, LLC'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT COURTNEY MACHI'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................3

    A.    Machi Joins Toptal And Gains Access To Toptal Proprietary Information Under The PIIA...........................................................................................3

    B.    Machi Accepts A Position At Andela's New York Headquarters ..........................5

    C.    Machi Violates Her Contractual Obligations To Toptal And Misappropriates Toptal's Trade Secrets And Confidential Information ................6

    D.    Toptal Files Suit ..................................................................................7

ARGUMENT ..........................................................................................................8

I.    THIS COURT HAS PERSONAL JURISDICTION OVER MACHI ...............................9

    A.    The Court Has Personal Jurisdiction Under CPLR 302(a)(1) ...............................9

        1.    Machi Transacted Business In New York And Contracted To Provide Services In New York ................................................... 10

        2.    The Claims Against Machi Arise From Her Contacts With New York ................................................................................. 14

    B.    Alternatively, The Court Has Personal Jurisdiction Under CPLR 302(a)(3) ........16

    C.    CPLR 302(a)(2) Also Is An Independent Basis For Personal Jurisdiction Over Machi ......................................................................................18

    D.    Exercise Of Personal Jurisdiction Over Machi Comports With Due Process .........................................................................................19

    E.    In Any Event, The Court Should Allow Toptal To Complete Jurisdictional Discovery ....................................................................................19

II.    MACHI'S RULE 12(B)(6) MOTION FAILS ..................................................20

CONCLUSION........................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AEI Life LLC v. Lincoln Benefit Life Co.*,
  892 F.3d 126 (2d Cir. 2018)................................................................................21

*Axos Bank v. 64-03 Realty LLC*,
  2024 WL 1435971 (E.D.N.Y. Apr. 3, 2024) ........................................................22

*Beacon Enterprises, Inc. v. Menzies*,
  715 F.2d 757 (2d Cir. 1983)................................................................................14

*Belen v. Herman*,
  2024 WL 182588 (S.D.N.Y. Jan. 17, 2024) ........................................................14

*Bemis Co. v. Summers*,
  2019 WL 1004853 (E.D. Cal. Feb. 28, 2019)......................................................20

*Capstone Logistics Holdings, Inc. v. Navarrete*,
  2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018).......................................................23

*Chatwal Hotels & Resorts LLC v. Dollywood Co.*,
  90 F. Supp. 3d 97 (S.D.N.Y. 2015) ....................................................................17

*City of New York v. A-1 Jewelry & Pawn, Inc.*,
  501 F. Supp. 2d 369 (E.D.N.Y. 2007) ................................................................18

*D&R Global Selections, S.L. v Bodega Olegario Falcon Pineiro*,
  29 N.Y.3d 292 (2017) .........................................................................................15

*DarkPulse, Inc. v. Crown Bridge Partners LLC*,
  2023 WL 6386006 (S.D.N.Y. Sep. 29, 2023).......................................................22

*Digital Lab Solutions, LLC v. Stickler*,
  2007 WL 700821 (S.D.N.Y. Mar. 6, 2007) .........................................................14

*DirecTV Latin Am., LLC v. Park 610, LLC*,
  691 F. Supp. 2d 405 (S.D.N.Y. 2010).................................................................16

*DiStefano v. Carozzi N. Am., Inc.*,
  286 F.3d 81 (2d Cir. 2001)..................................................................................19

*Eli Lilly do Brasil, Ltda v. Fed. Express Corp.*,
  502 F.3d 78, 82 (2d Cir. 2007)............................................................................21

*EMA Fin., LLC v. NFusz, Inc.*,
  444 F. Supp. 3d 530 (S.D.N.Y. 2020)...................................................................22

*Energy Brands Inc. v. Spiritual Brands, Inc.*,
  571 F. Supp. 2d 458 (S.D.N.Y. 2008)...................................................................17

*Fat Brands Inc. v. Ramjeet*,
  75 F.4th 118 (2d Cir. 2023) .............................................................................9, 19

*Fica Frio, Ltd. v. Seinfeld*,
  434 F. Supp. 3d 80 (S.D.N.Y. 2020).....................................................................18

*George Reiner & Co. v. Schwartz*,
  41 N.Y.2d 648 (1977) .........................................................................................11

*Gerffert Co., Inc., Stephen Panigel v. Fratelli Bonella, SRL*,
  2015 WL 6127078 (Sup. Ct. Nassau Cnty. 2015) ................................................14

*Gerstle v. Nat'l Credit Adjusters, LLC*,
  76 F. Supp. 3d 503 (S.D.N.Y. 2015)......................................................................14

*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*,
  213 F.3d 48 (2d Cir. 2000)....................................................................................17

*High St. Cap. Partners, LLC v. ICC Holdings, LLC*,
  2019 WL 2106093 (Sup. Ct. N.Y. Cnty. May 14, 2019).......................................11

*Hill v. HSBC Bank PLC*,
  207 F. Supp. 3d 333 (S.D.N.Y. 2016)....................................................................16

*In re Polygon Glob. Partners LLP*,
  2021 WL 2117397 (S.D.N.Y. May 25, 2021) ................................................10, 19

*Jimenez v. Bosie, LLC*,
  2021 WL 2941916 (S.D.N.Y. July 12, 2021) .................................................12, 19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  732 F.3d 161 (2d Cir. 2013).....................................................................................9

*Licci v. Lebanese Can. Bank, SAL*,
  20 N.Y.3d 327 (2012) ....................................................................................10, 15

*Ministers & Missionaries Benefit Bd. V. Snow*,
  26 N.Y.3d 466 (2015) ...........................................................................................21

*Mort. Funding Corp. v. Boyer Lake Pointe, L.C.*,
  379 F. Supp. 2d 282 (E.D.N.Y. 2005) ..................................................................16

*Oasis Invs. II Master Fund Ltd. v. Mo*,
208 N.Y.S.3d 922 (N.Y. Sup. Ct. 2024) ...................................................................15

*Peeq Media, LLC v. Buccheri*,
2016 WL 5947295 (S.D.N.Y. Oct. 13, 2016) ..........................................................14

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
16 N.Y.3d 295 (2011) ...............................................................................................16

*Peters v. Guaranteed Rate, Inc.*,
2024 WL 2925309 (N.D. Cal. June 10, 2024) .........................................................23

*Reeves v. Phillips*,
54 A.D.2d 854 (1st Dept. 1976)................................................................................19

*Roxx Allison Ltd. v. Jewelers Inc.*,
385 F. Supp. 3d 377 (S.D.N.Y. 2019).......................................................................16

*Rushaid v. Pictet & Cie*,
28 N.Y.3d 316 (2016) ...............................................................................................15

*Sands Harbor Marina Corp. v. Wells Fargo Insr.*,
*156 F. Supp. 3d 348 (E.D.N.Y. 2016)* ....................................................................17

*SmartPros, Ltd. v. Straub*,
24 A.D.3d 653 (2d Dept. 2005) .................................................................12, 15, 16

*Sullivan v. Jersey Strong Licensing LLC*,
2019 WL 3066492 (S.D.N.Y. July 12, 2019) ..........................................................18

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004)........................................................................................11

*TBA Glob., LLC v. Proscenium Events, LLC*,
114 A.D.3d 571 (1st Dept. 2014)..............................................................................22

*Transaero, Inc. v. Chappell*,
2014 WL 1783732 (E.D.N.Y. May 6, 2014) ...........................................................11

*Uebler v. Boss Media, AB*,
363 F. Supp. 2d 499 (E.D.N.Y. 2005) ......................................................................20

*Wells Fargo Bank N.A. v. Sovereign Bank, N.A.*,
44 F. Supp. 3d 394 (S.D.N.Y. 2014).........................................................................21

*Wilhelmshaven Acquisition Corp. v. Asher*,
810 F. Supp. 108 (S.D.N.Y. 1993) ...........................................................................14

*Willis v. Herriott*,
 550 F. Supp. 3d 68 (S.D.N.Y. 2021)...........................................................................21, 22, 23

## STATUTES

Cal. Lab. Code § 925 ...............................................................................................................21

## RULES

CPLR 302(a) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b) ................................................................................... *passim*

Plaintiff Toptal, LLC ("Toptal") opposes Defendant Courtney Machi's ("Machi") Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Rule 12(b)(6) (the "Motion" or "Mot.").[1]

## PRELIMINARY STATEMENT

This case arises from actions occurring in and directed at New York to benefit New York-based Defendant Andela, Inc. ("Andela") and cause extensive harm to Toptal in New York. There is no dispute that Toptal's claims against Andela focus on New York, and New York is the nexus for Toptal's claims against Defendant Machi as well.

Toptal is a limited liability company ("LLC") whose sole member is a resident of New York. Machi worked for Toptal for nearly five years as the Senior Product Manager and Director of Product—a high-level role. Through that work, she gained access to Toptal's most valuable trade secrets and confidential information, including proprietary internal processes and product and customer information. Andela (a would-be competitor) approached and recruited Machi, who accepted a New York-based role at Andela and then promptly (i) solicited more Toptal personnel to join her and (ii) divulged a whole range of Toptal's valuable trade secrets and confidential information to further Andela's competing business interests. In so doing, Machi breached her contractual post-employment obligations to Toptal and caused direct harm to Toptal in New York.

Based on detailed allegations supported by a mountain of documentary evidence, Toptal asserts claims against Andela and Machi for violation of the Defend Trade Secrets Act of 2016 ("DTSA"), misappropriation of trade secrets, unfair competition, tortious interference with contract (by Andela), and breach of contract (by Machi). The parties litigated this case for three

---

[1] Unless otherwise indicated, citations and quotations are omitted, emphasis is added, citations to "Ex. __" refer to the exhibits attached to the Declaration of Megan A. Behrman, and references to "AC" refer to the Amended Complaint, ECF No. 1-5.

years in New York state court, where Machi's earlier motion to dismiss was denied. Machi now desperately seeks a second bite at the apple after Defendants removed the case to this Court. But there is no basis for dismissing Toptal's claims against Machi, and her Motion must be denied.

*First*, Machi argues she cannot be subject to personal jurisdiction in New York because, like thousands of others during the COVID-19 pandemic, she performed the duties of her New York-based role from a remote location. That argument fails under New York law, and the evidentiary record developed thus far demonstrates more than sufficient connections between Machi and New York to subject Machi to personal jurisdiction in New York under its long-arm statute. Machi contracted with New York-based Andela and accepted an executive-level role physically based in New York (as Machi's Andela offer letter expressly states), and she frequently interacted with Andela personnel in New York, including via a "NY Product group." Furthermore, Machi repeatedly engaged in activities, including misappropriating Toptal's trade secrets and confidential information and soliciting Toptal personnel, that were directed at New York and/or undertaken on behalf of New York-based Andela and its New York-based executives, all of which caused Toptal to suffer harm in New York. Accordingly, Toptal has established a *prima facie* basis for personal jurisdiction over Machi. At a minimum, Toptal should be permitted to complete its jurisdictional discovery (including a deposition of Machi).

*Second*, Machi's Rule 12(b)(6) dismissal argument is based on law that does not apply here. She asks this Court to disregard its own choice-of-law rules and apply California law to absolve Machi of her many breaches of the contractual commitments she made to Toptal under a Proprietary Information and Inventions Agreement (ECF No. 17-3 at 5, the "PIIA"). The PIIA at issue contains a *Delaware choice-of-law provision*, and Machi has supplied no basis upon which to substitute another jurisdiction's law in place of the state law to which Toptal and Machi agreed.

The Amended Complaint is replete with examples of instances where Machi flagrantly breached her post-employment obligations to Toptal—and Machi does not argue otherwise.  Machi participated in the solicitation of numerous former Toptal personnel who then joined Andela; she became a 'go-to' point person within Andela for divulging Toptal proprietary and confidential information, including trade secrets, to Andela; and she actively provided "intelligence" to her Andela colleagues about other key Toptal personnel that Andela ought to target and solicit for particular roles at Andela.  That conduct violated several key provisions of Machi's contractual obligations to Toptal, which are enforceable under governing Delaware law.

Tellingly, Machi has not argued in the Motion (or in her earlier state court motion) that Toptal's extensive and detailed allegations of her wrongdoing fail to state a claim for violation of the DTSA, misappropriation of trade secrets, or unfair competition claims.  Nor could she. Machi's attempt to sidestep those well-supported claims with a retread of her prior personal jurisdiction argument should be rejected, as should her baseless argument that California law precludes Toptal's breach of contract claim.  The Motion should be denied.

## **BACKGROUND**

### A.    **Machi Joins Toptal And Gains Access To Toptal Proprietary Information Under The PIIA**

Toptal—short for "top talent"—curates a proprietary talent network of select, highly skilled independent contractors, such as engineers, software developers, designers, finance experts and product managers, and rapidly matches that talent to its clients in the United States and globally.  AC ¶ 3.  Founded in 2010, Toptal has grown rapidly to become one of the world's largest fully distributed, fully remote workforces.  *Id.*  Toptal operates what it believes to be the largest high-skilled, on-demand talent network in the world.  *Id*.  Through Toptal's meticulously designed proprietary screening process, developed after substantial time and investment over the past

decade, Toptal meets its clients' needs by matching them promptly and "on demand" with top talent in Toptal's curated global talent network. *Id.* This talent network is thoroughly screened. Fewer than 3% of applicants pass Toptal's rigorous screening process and are invited to join the Toptal talent network. *Id.* Toptal matches talent globally as needed by its global roster of clients to work on some of their most important or mission critical projects. *Id.* Toptal is a single member LLC organized under the laws of Delaware, *id.* ¶ 18, and its sole member, Taso Du Val, is a New York resident, *see* AC at 76 (showing Mr. Du Val verified the AC in New York).

On May 22, 2017, Machi executed two agreements in connection with her employment at Toptal: an employment offer letter and the PIIA. *See* ECF No. 17-3. The PIIA is the agreement on which Toptal's breach of contract claim is based. *See* AC ¶¶ 96-101 (quoting from the PIIA only). In the PIIA, Machi agreed that "all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees)" that she developed, learned, or obtained while at Toptal would be Proprietary Information that she would "hold in confidence and not disclose or, except in the scope of and as authorized during [her] employment, use." ECF No. 17-3 at 6 § 4. This provision was critical to Toptal because Machi was one of the most senior members of Toptal's product department and was given direct access to and deep knowledge of Toptal's trade secret information and its personnel and customer information. Sections 5, 7, and 8 constitute Machi's one-year non-solicitation agreement, and Section 6 includes a non-competition provision. *Id.* at 7-9. The PIIA contains a choice-of-law provision that subjects disputes arising under the agreement to adjudication under Delaware law. *Id.* at 9 § 12; AC ¶ 18.

While at Toptal, Machi worked on projects meant to customize and scale Toptal's platforms for its operations. *See* AC ¶ 94. She understood the customized suite of software that

makes up Toptal's proprietary platform, including how the platform was configured and how the different components interacted to form a cohesive platform. *Id.* When she joined Andela, the proprietary Toptal information Machi held was invaluable for a competitor seeking to replicate Toptal's operational and financial success in solving for the significant logistical and other process challenges of creating a fully remote company on a global scale with the ability to quickly match clients and talent on demand and at scale, in large volumes. *Id.*

### B.    Machi Accepts A Position At Andela's New York Headquarters

On March 10, 2020, after working for Toptal for nearly five years, Machi received an offer letter to join Andela. Ex. 1, at ANDELA 002316.[2] That letter "summarize[d] the terms of [her] employment" and provided that Machi "will be employed to serve on a full-time basis as VP of Product, effective May 11, 2020. In this position, you will report to David Blair. ***You will be based in Andela's New York City office*.**" *Id.* That same day, Machi wrote to Andela's Head of US Talent Acquisition and asked, "***[d]oes Andela's New York office provide any office perks such as lunches and gym memberships?*"** Ex. 4, at MACHI 000373. She then unequivocally stated on March 11, 2020, "***I'll be moving to New York*"** and requested assistance finding housing in New York for her and her husband. *Id.* at MACHI 000372.

Machi's New York plans apparently were impacted by the COVID-19 pandemic. *See* Ex. 5, at MACHI 000334. However, she "hope[d]" to work in New York "sometime soon!" and viewed her role as VP of Product as New York-based. Ex. 6, at MACHI 000031. Machi even posted a job description for an executive role at Andela in a "NY product group." Ex. 7, at ANDELA 001690. Machi also admits that she "***traveled to New York on business while with***

---

[2] Even before then, David Blair had solicited Machi for the position at Andela in December 2019, confirming with Machi that the "role is based out of New York because many of the operational leaders are based there." Ex. 2, at MACHI 000013. Machi interviewed with members of Andela's team, including Andela CEO Jeremy Johnson and COO Jessica Hunt, who were identified to her as being based in New York. *See* Ex. 3, at ANDELA 110169.

*Andela*." ECF No. 17-2, Machi Decl., ¶ 18; *see also* Mot. at 11. Andela, for its part, continues to list 580 Fifth Avenue, Suite 820, New York, New York as the address for its principal executive office and CEO. Ex. 8. And Andela's recent biennial statements filed with the New York Department of State ("NYDOS") list New York City addresses for both its "Chief Executive Officer's Name and Address" and its "Principal Executive Office Address." Exs. 8-9. While Machi relies upon a three year-old affidavit from Akash Bhati claiming that Andela "vacated its former New York office" in June 2020, ECF No. 17-4, Bhati Aff., at ¶¶ 10-11 (cited in Mot. at 4), she does not submit evidence to refute Andela's ongoing representations to the NYDOS that Andela and its CEO currently have a physical office in New York at another address.

### C. Machi Violates Her Contractual Obligations To Toptal And Misappropriates Toptal's Trade Secrets And Confidential Information

As Toptal alleged in the Amended Complaint and confirmed through document discovery, Andela engaged in a deliberate scheme to steal proprietary information from Toptal. *See* AC ¶ 8. Andela hired and solicited information from at least 30 former Toptal personnel, in violation of those individuals' confidentiality, non-solicitation and non-compete agreements with Toptal, and deployed many of them to solicit other Toptal personnel. AC ¶¶ 1, 91. Through these efforts, Andela improperly gained access to Toptal's trade secrets and confidential information, and Andela fundamentally transformed itself from a company operating on-site business hubs in Africa to become a Toptal copycat and freeride on Toptal's successful fully remote, global business model. *E.g.*, *id.* ¶¶ 48, 55-56.

Machi was a key component of this effort. Upon joining Andela in 2020, Machi divulged Toptal trade secrets and confidential information to Andela's CEO, Jeremy Johnson, and other Andela executives and personnel (many of whom were located in New York) and solicited numerous Toptal personnel at the direction of Andela's executive leadership. *See* AC ¶¶ 11, 77,

183-201.  For example, in brazen violation of her non-solicitation obligations to Toptal, Machi participated in the solicitation of the following former Toptal personnel who then joined Andela: Sheryna Goss, Carolina Della Corte, Leandro Zanella de Souza Campos, and Eryn Peters, *id.* ¶ 199; became an Andela point person for providing Toptal proprietary and confidential information, including trade secrets, to Andela, *id.* ¶¶ 15-16, 185, 190-91, 193-95; actively provided "intelligence" to Andela colleagues about key Toptal personnel to solicit for particular roles at Andela, including exchanging WhatsApp messages with Andela CEO Johnson regarding the recruitment of Toptal employees to Andela, *id.* ¶¶ 77, 194, 196, 198-99, 238; and provided material information and edited a document entitled "Toptal Info" (hereinafter, the "Toptal Info Compendium") at the direction of Andela executives who wanted the document to be "easier to understand and implement for Andela," *id.* ¶ 187; Ex. 10, at ANDELA 000976.  Machi completed a SWOT (strengths, weaknesses, opportunities and threats) analysis of Toptal during her onboarding for Andela, and she set a "30 day" goal as a newly hired executive *of Andela* of "[h]av[ing] provided *basic insight into how Toptal does things for folks around the company*," AC ¶¶ 188-89; *see also* Ex. 11, at ANDELA 006723, -6727.  She also made a presentation to other Andela executives and key personnel in June 2020 about Toptal's portal, AC ¶ 192, and participated in "interviews" that Andela orchestrated to replicate Toptal's strategies and successes, including with participation by CEO Johnson, whose office address is listed in New York, *see id.* ¶¶ 61-63.

### D.    Toptal Files Suit

Toptal filed this action in the Supreme Court of the State of New York, Commercial Division (the "State Court") on June 8, 2021.  Machi filed a motion to dismiss on August 31, 2021, arguing that the New York court lacked jurisdiction over her. ECF No. 10-1 at 93, 105-116.  While that motion was pending, Toptal served document requests on Andela seeking documents relevant

to Machi's New York contacts.  *See* Ex. 12 ¶¶ 58-75.  Andela refused to produce jurisdictional

discovery while the motion was pending.  *Id.*  The State Court denied Machi's motion to dismiss

on May 16, 2022.  ECF No. 10-3 at 164.  The case proceeded to discovery, and Machi never raised

a jurisdictional dispute again until the instant Motion.  Importantly, the State Court did not hold

Machi's motion to dismiss in abeyance while jurisdictional discovery took place; instead, it denied

the motion in its entirety.  *Id.*  On April 29, 2024, after learning of additional evidence of

Defendants' misconduct, Toptal filed a motion for leave to amend its complaint to add a DTSA

claim against both Defendants (among other amendments).  ECF No. 10-14 at 225-40.  The State

Court granted that motion over Defendants' objection; Toptal filed the Amended Complaint on

May 23, and Defendants removed this action one day later.  *See* ECF Nos. 1-1; 10-36 at 84, 105-

80.  The Motion followed thereafter.  *See* ECF No. 17.

## **ARGUMENT**

Machi argues that this Court lacks jurisdiction over her, claiming she lacks sufficient

contacts with the state of New York.  She further contends the Amended Complaint fails to state

a claim against her—an argument that relies heavily on her *post hoc* efforts to re-write or re-

interpret the terms of her agreement with Toptal.  Machi's arguments are both legally deficient

and contradicted by extensive evidence.  Her Motion should thus be denied.

*First*, this Court has personal jurisdiction over Machi—just as the New York State Court

had jurisdiction over her throughout this three-plus year litigation.  Machi contracted with New

York-headquartered Andela to provide services physically in New York, she transacted business

in New York, she committed tortious acts in New York, and she caused commercial harm to Toptal

in New York, where its sole member resides.  Any of these actions is independently sufficient to

establish jurisdiction under New York's long-arm statute, and subjecting Machi to jurisdiction in

New York comports with due process.

*Second*, the Amended Complaint states a claim for breach of contract against Machi for her flagrant violations of the PIIA.  The PIIA is expressly governed by Delaware law, which generally enforces non-solicitation, non-competition, and confidentiality clauses like those in Machi's agreement.  Machi argues the PIIA should be governed by California law, notwithstanding the complete absence of any California choice-of-law provision in the PIIA itself.  Machi's arguments are grounded in the *wrong agreement* and are meritless because the Delaware choice-of-law provision in the PIIA is enforceable under New York choice-of-law rules and public policy.

## I.    THIS COURT HAS PERSONAL JURISDICTION OVER MACHI

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013).  Federal courts examining jurisdiction consider the law of the forum state and whether exercising jurisdiction comports with due process.  *See, e.g.*, *id.*  The Court must "accept[] as true all factual claims in the complaint and draw[] all reasonable inferences in the plaintiff's favor."  *Fat Brands Inc. v. Ramjeet*, 75 F.4th 118, 125 (2d Cir. 2023).  New York's long-arm statute provides for specific jurisdiction over a defendant not domiciled in New York under three different circumstances, each independently applicable here: where the defendant (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state"; (2) "commits a tortious act within the state"; or (3) "commits a tortious act without the state causing injury to person or property within the state."  CPLR 302(a).  Applying any of these alternative grounds, Toptal has established a *prima facie* basis (at least) for personal jurisdiction over Machi, just as the New York state court previously held.

### A.    The Court Has Personal Jurisdiction Under CPLR 302(a)(1)

Pursuant to CPLR 302(a)(1), New York courts have jurisdiction over defendants who transact business in New York or contract to provide services in New York where the claim at

issue is arguably connected to such a transaction.  *E.g.*, *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 334, 340 (2012).  The record evidence and Toptal's allegations regarding Machi easily meet that test.

### 1. *Machi Transacted Business In New York And Contracted To Provide Services In New York*

By definition, Machi transacted business in and contracted to provide services in New York when she signed an offer letter stating she would be "***based in Andela's New York City office.***" Ex. 1, at ANDELA 002316, -2318; *e.g.*, *In re Polygon Glob. Partners LLP*, 2021 WL 2117397, at *5-6 (S.D.N.Y. May 25, 2021) (exercising jurisdiction over remote employees who publicly hold themselves out to be associated with their employer's New York office "is a far cry from a situation in which one's contact with the forum jurisdiction is random, fortuitous, or attenuated").  Machi argues that she is not subject to personal jurisdiction in New York because, she claims, Andela is not "located in New York—or anywhere, for that matter," due to its supposed "fully remote workforce" and status as a "fully remote company."  Mot. at 10, 13-14.  Machi is wrong—on the facts and the law.

At the time Machi contracted with Andela, Andela was not fully remote.[3]  It had offices in New York, where Machi was expected to work according to her offer letter.  Ex. 1, at ANDELA 002316.  To this day, Andela publicly states that its principal and executive offices are located in New York.[4]  Ex. 8.  And Machi admits that despite the COVID-19 pandemic that impacted her New York plans, she nonetheless traveled ***to New York in May 2021*** on Andela business to meet

---

[3] Machi's argument that Andela was not located "anywhere," Mot. at 14, is contradicted both by the unassailable facts showing Andela to be located in New York and by the fact that Andela itself has not suggested that it is not subject to personal jurisdiction in New York.

[4] Even if Andela "vacated its former New York office" on West 29th Street, Bhatia Aff. ¶ 11, that location was Andela's corporate headquarters when the initial complaint was filed and for months thereafter.  *See* ECF No. 10-2 at 147-49 (listing Andela's Legal Department and the Data Protection Officer at that address).  Plus, Andela later moved its principal executive offices to a Fifth Avenue address *in New York*.  *Id.* at 153.

with CTO Blair and CEO Johnson.[5]  Machi Decl. ¶¶ 18-19; *see George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 653 (1977) (exercising jurisdiction over out-of-state defendant who worked for a New York-based company but came to New York only once to negotiate his employment contract).  Additionally, Machi's employment with Andela is governed by New York law, Ex. 1, at ANDELA 002318, which further shows that Machi "purposefully availed [her]self of the privilege of conducting activities within New York and thereby invoke[d] the benefits and protections of its laws."  *Transaero, Inc. v. Chappell*, 2014 WL 1783732, at *5 (E.D.N.Y. May 6, 2014); *see also Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) (analyzing choice-of-law provision in personal jurisdiction analysis).

Moreover, personal jurisdiction exists based on Machi's continuous and ongoing communications during the course of her employment (*e.g.*, calls, emails, WhatsApp messages, and so forth) directed to other Andela executives and personnel located in New York—even apart from the business Machi admits she conducted while physically in New York as part of her employment.  *E.g.*, *Transaero*, 2014 WL 1783732, at *6 (out-of-state employee who worked "for a New York company," "exchanged emails with New York-based employees," "interacted regularly with the New York employer's CEO," "received directives from New York," and "entered into a confidentiality agreement with his New York employer" subject to personal jurisdiction); *see also High St. Cap. Partners, LLC v. ICC Holdings, LLC*, 2019 WL 2106093, at *2 (Sup. Ct. N.Y. Cnty. May 14, 2019) ("Because technological advances in communication . . . enable a party to transact enormous volumes of business within a state without physically entering it, New York courts have recognized CPLR 302(a)(1) long-arm jurisdiction over commercial actors . . . using electronic and telephonic means to project themselves into New York to conduct

---

[5] Machi's claim that neither of her Andela superiors with whom she met in New York were "formerly from Toptal," Mot. at 11, is completely irrelevant.

business transactions.").  Machi's argument that she is not subject to jurisdiction because she did not physically spend significant time in New York is thus a red herring and contrary to New York law.  *See SmartPros, Ltd. v. Straub*, 24 A.D.3d 653, 653-54 (2d Dept. 2005) (A "defendant's systematic, ongoing relationship with a New York company, with which [s]he was in daily contact due to [her] employment, just as if [her] office were physically located in New York, is transacting business in New York sufficient to confer personal jurisdiction."); *Jimenez v. Bosie, LLC*, 2021 WL 2941916, at *2 (S.D.N.Y. July 12, 2021) ("When a defendant's remote communications effectuate some purposeful business in New York, personal jurisdiction will be found even if a defendant never actually entered the state.").

The Amended Complaint cites specific communications in which Machi engaged with Andela personnel located in New York.  Indeed, the "Onboarding Guide" Machi received from Andela in April 2020 reveals that ***five out of six of Andela's executives were based in New York City***.  *See* Ex. 13, at MACHI 000317 (listing Jeremy Johnson (CEO), Jess Hunt (COO), Isaac Itenberg (CFO), Bryan Caplin (CRO), and Milli Feldman (CPO), as well as Mary Decker (EA for Executive), as being based in "NYC").  The Onboarding Guide lists several other individuals, including from Machi's "Team & Peers" as being based in NYC as well.  *Id.* at -318-320.  That, of course, makes sense because Andela is a New York-based company—and has informed New York state authorities that it is so.  Exs. 8-9.

Further, Machi worked closely with Andela's New York-based leadership team, including in ways that harmed Toptal and breached her contractual obligations to Toptal.  *See* AC ¶ 190 (Machi admitting that she "was working with almost everyone from the [Andela] business ***especially those in leadership positions***").  For example, Machi repeatedly divulged Toptal trade secrets and confidential information to Andela, which were incorporated into Andela's Toptal Info

Compendium.  *E.g.*, AC ¶¶ 14, 65, 66, 187.  Andela created that document with information gleaned from "former relationships with Toptal to gain access to Toptal's trade secrets and confidential information, including Toptal's methods for vetting top talent, its clients lists, and its methods of managing a fully remote work force and global talent network."  *Id.* ¶¶ 13-14; *see also id.* ¶ 66 (discussing the Toptal Info Compendium).  Machi played an active role, based on directives given by Andela executives in New York, in editing the document to make it more useful to Andela in copying Toptal's success.  *Id.* ¶ 187.  In fact, Machi became the "point person within Andela for providing Toptal know-how to solve for various challenges faced by Andela product developers, . . . freely disclosing information concerning Toptal's portal and other products that she was required to keep secret . . . ."  *Id.* ¶ 16.  Machi also wrote that within 30 days of joining Andela she hoped to "[h]ave provided basic insight into how Toptal does things for folks around the company."  *Id.* ¶¶ 188-89.  Eminently reasonable inferences—grounded in the Amended Complaint and Machi's offer letter, emails with Andela HR, and with Blair about coming to New York for onboarding before the COVID-19 pandemic struck—lead to the conclusion that Machi divulged troves of confidential and proprietary Toptal information to Andela's executives, most of whom were based in New York.

Critically, the Amended Complaint includes factually specific allegations regarding Machi's communications with NYC-based CEO Johnson (and others).  For example, Machi "suggested that Mr. Johnson consider a candidate from Toptal for the new head of sourcing position at Andela" and "further suggested that Mr. Johnson discuss the candidate with Mr. Beneschott and Mr. Oliveira, both of whom had interacted with the candidate more while at Toptal."  *Id.* ¶ 77.  Further, in June 2020, Machi gave a presentation focused on Toptal's talent portal to other Andela executives, many of whom were based in New York, in which she disclosed

proprietary and confidential information including without limitation about how the portal was configured and worked. *Id.* ¶ 192.[6]

Contrary to Machi's baseless claim that Toptal's personal jurisdiction allegations are vague or conclusory, the detailed allegations summarized above demonstrate that Machi engaged in purposeful, systematic conduct with Andela at its principal place of business in New York.[7] *E.g.*, *Peeq Media, LLC v. Buccheri*, 2016 WL 5947295, at *3 (S.D.N.Y. Oct. 13, 2016) ("Where an employee ma[kes] his living by working for a New York-based company . . . ***working from home*** ***does not undermine that employee's New York contacts*** where 21st-Century technology enables him to maintain consistent contacts with his employer over email, phone, and remote log-on to the company's servers."). Accordingly, Machi is subject to personal jurisdiction in New York.

### 2. *The Claims Against Machi Arise From Her Contacts With New York*

"The second prong [of CPLR 302(a)(1)] . . . requires a showing of relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Belen v. Herman*, 2024 WL 182588   at *3

---

[6] Machi's cases regarding correspondence sent into New York by a nondomiciliary, Mot. at 12, are inapposite. First, *Digital Lab Solutions, LLC v. Stickler*, found no personal jurisdiction where "[t]he purpose of defendants' e-mails was not actively to participate in business in New York, but rather to create a new business in California." 2007 WL 700821, at *4 (S.D.N.Y. Mar. 6, 2007). Machi's conduct here was to build up and transform Andela's business model from its headquarters and nexus of operations in New York. Second, *Beacon Enterprises, Inc. v. Menzies* found a single "cease and desist" letter unrelated to the cause of action was not sufficient to support jurisdiction. 715 F.2d 757, 766 (2d Cir. 1983). Here, Machi's communications with her New York-based employer are voluminous and relate directly to Toptal's claims. Third, *Wilhelmshaven Acquisition Corp. v. Asher* noted that contract negotiations that were only in part directed at New York were not sufficient because "[t]he center of gravity of the transaction was an oil refinery in Germany," 810 F. Supp. 108, 113 (S.D.N.Y. 1993), whereas the "center of gravity" of Machi's misconduct is in New York.

[7] The cases Machi cites to argue the jurisdictional facts were not sufficiently specific are readily distinguishable and do not salvage her analysis. In *Gerffert Co., Inc., Stephen Panigel v. Fratelli Bonella, SRL*, for example, the complaint relied upon allegations "made upon information and belief" and "collectively" pleaded allegations against two individual defendants that were "undifferentiated" and did not "detail precisely how [either defendant] individually engaged in purposeful activities within the State of New York." 2015 WL 6127078, at *5 (Sup. Ct. Nassau Cnty. 2015); *see also Gerstle v. Nat'l Credit Adjusters, LLC*, 76 F. Supp. 3d 503, 510 (S.D.N.Y. 2015) (allegations were "broadly worded and vague" and used "the same boilerplate description for the actions").

(S.D.N.Y. Jan. 17, 2024) (quoting *Licci*, 20 N.Y.3d at 339-40). "This inquiry is relatively permissive and an articulable nexus or substantial relationship exists where at least one element arises from the New York contacts rather than every element of the cause of action pleaded." *D&R Global Selections, S.L. v Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 299 (2017); *see also Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 329 (2016) ("The claim need only be in some way *arguably connected* to the transaction.").

Here, the Amended Complaint pleads Machi's New York contacts with Andela facilitated the misappropriation of trade secrets, unfair competition, and breach of the PIIA. As explained above, Machi agreed to work for would-be competitor Andela, and then disclosed Toptal's trade secrets and confidential information and solicited Toptal talent and core team members to work at Andela at the request, and for the benefit, of other Andela executives and colleagues located in New York. *See e.g.*, AC ¶¶ 11, 17, 186-95. These acts directly harmed Toptal, a single member LLC whose sole member resides in New York. AC ¶¶ 18, 287, 289, 297, 299, 307, 309, 316, 318, 323, 325. Such contacts with New York are more than merely "arguably linked" to Toptal's claims against Machi. *Rushaid*, 28 N.Y.3d at 329; *see also SmartPros*, 24 A.D.3d at 654 (a substantial relationship existed between the defendant's New York contacts and plaintiff's causes of action premised on defendant's breach of his employment agreement). Machi, a former member of Toptal's senior leadership team with direct access to and deep knowledge of trade secrets and proprietary and confidential information and currently an executive-level employee at Andela, was a primary actor in the relevant transactions centered in New York. *See* AC ¶¶ 93-94; *Oasis Invs. II Master Fund Ltd. v. Mo*, 208 N.Y.S.3d 922 (N.Y. Sup. Ct. 2024) ("The critical issue is whether [Defendants] were "primary actors" with respect to the [t]ransaction and [their company's] business in New York such that they are subject to personal jurisdiction pursuant to CPLR § 302

15

(a)(1)"); *see also supra* Section I.A.1.  At bottom, New York is an undisputable "center of gravity"

for Machi's business transactions and services that give rise to this action, and thus she is subject

to personal jurisdiction in New York (as the State Court previously held).[8]  These contacts by

Machi, acting as an Andela executive, are sufficient to establish jurisdiction under New York law.

*See SmartPros*, 24 A.D.3d at 654.

### B.    Alternatively, The Court Has Personal Jurisdiction Under CPLR 302(a)(3)

In the event that Machi were not subject to personal jurisdiction under CPLR 302(a)(1)—

which, as explained above, she is—this Court can exercise jurisdiction over Machi pursuant to

CPLR 302(a)(3).  Under that provision of the long-arm statute, a defendant is subject to personal

jurisdiction in New York if "(1) the defendant committed a tortious act outside New York; (2) the

cause of action arose from that act; (3) the tortious act caused an injury to a person or property in

New York; (4) the defendant expected or should reasonably have expected the act to have

consequences in New York; and (5) the defendant derived substantial revenue from interstate or

international commerce."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011).

Machi argues only the third, fourth, and fifth elements of that test, and each one of those arguments

fails.

---

[8] Judge Rakoff recently noted that the "center of gravity" test urged by Machi is not the appropriate test for personal jurisdiction in New York.  *See Roxx Allison Ltd. v. Jewelers Inc.*, 385 F. Supp. 3d 377, 382-83 (S.D.N.Y. 2019) ("the phrase seems to appear in New York State court decisions only in the context of choice-of-law analysis, not personal jurisdiction").  Nevertheless, even if it applied, a dispute can have multiple centers of gravity for personal jurisdiction purposes.  *Id.*  In any event, Machi misleadingly omits important context from her "center of gravity" cases that demonstrate why they are distinguishable from the instant case.  *See Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333, 339-340 (S.D.N.Y. 2016) ("incidental" communications and transmittals were insufficient because they were "in connection with [the defendants'] fund administration and/or custodial duties under agreements negotiated" outside New York); *Mort. Funding Corp. v. Boyer Lake Pointe, L.C.*, 379 F. Supp. 2d 282, 286-288 (E.D.N.Y. 2005) (defendants had no "ongoing relationship with a New York entity," the subject matter of the contract was solely outside of New York, and complaint did not allege whether notices or payments were required to be sent to New York); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 421 (S.D.N.Y. 2010) ("the center of gravity of the transaction at issue was indisputably outside New York" because "no part of the contract was to take place in New York").

*First*, New York is the situs of the injury because that is where the original critical events giving rise to the harm to Toptal occurred and where Andela and its CEO are located.  *See Sands Harbor Marina Corp. v. Wells Fargo Insr.*, 156 F. Supp. 3d 348, 357 (E.D.N.Y. 2016).  Machi spoon-fed Andela's CEO and executive team—sitting in New York—troves of Toptal's confidential and proprietary information, as well as its trade secrets.  *E.g.*, AC ¶¶ 15-16, 61-63, 77, 187-89, 192.  New York is thus where Machi wrongfully divulged Toptal's trade secrets and other confidential information and where Andela wrongfully leveraged that information (at the direction of CEO Johnson) to Andela's benefit and Toptal's detriment.  *E.g.*, AC ¶¶ 61-68.  Moreover, Toptal's single member, Mr. Du Val, is a resident of New York, and therefore Toptal itself is located in and was injured in New York.  *Cf. Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000) ("[F]or purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership.").  Put simply, Machi directed actions towards New York to benefit one company in New York (Andela) and harm another in New York (Toptal).

*Second*, given the evidence in the record, Machi should have expected her conduct to have consequences in New York.  *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 471-72 (S.D.N.Y. 2008).  Machi knew that she was contracting with Andela for an in-person position in New York; she knew that Andela's executives and other team members to whom she revealed Toptal's trade secrets and confidential information were based in New York; she knew that Andela was starting to market its services globally, including to companies based in New York; and she should have known that Toptal would be harmed by her actions in New York.  *See* AC ¶¶ 11, 19, 20, 22, 23; Ex. 1, at ANDELA 002316; Ex. 2, at MACHI 000013; *see also Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 106-07 (S.D.N.Y. 2015) ("defendants should have reasonably expected its acts to have consequences in New York when it used its

17

allegedly infringing website and emails to attract customers across the nation, including New York").

*Third*, Machi derives substantial revenue—her income—from interstate or international commerce. *See* Ex. 14, at ANDELA 001635 (Andela notes from "VP Product Interviewing" describing salary and stock options offer to Machi). She has been employed and has derived compensation from Andela at each place she has resided from May 2020 through the present.[9] Additionally, since Machi personally benefitted in the form of salaries or other compensation, Andela's New York contacts are imputed to her—and Andela plausibly derives the vast majority of its revenue from interstate commerce as a remote company. *See e.g.*, *City of New York v. A-1 Jewelry & Pawn, Inc.*, 501 F. Supp. 2d 369 (E.D.N.Y. 2007).[10]

### C.    CPLR 302(a)(2) Also Is An Independent Basis For Personal Jurisdiction Over Machi

Machi is also subject to personal jurisdiction under CPLR 302(a)(2) for two reasons. *First*, she admits to being physically present in New York for business meetings with other Andela executives, including CEO Johnson and her supervisor CTO Blair. *See* Machi Decl. ¶¶ 18-19. Given Machi's extensive involvement in Andela's plans to misappropriate Toptal's trade secrets and confidential information and solicit Toptal personnel, Toptal appropriately contends that in these meetings Machi divulged confidential Toptal information, as part of Andela's tortious

---

[9] These payments were presumptively authorized from Andela's headquarters in New York or come from a New York bank account—although that is not a prerequisite since the fifth element is simply meant to narrow long-arm jurisdiction "over nondomiciliaries . . . whose business operations are of a local character." *See Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80, 92 (S.D.N.Y. 2020) (analyzing "out-of-state revenue").

[10] Machi's assertion that Toptal did not "demonstrate '"tangible manifestations" of . . . [D]efendant's intent to target New York, or . . . "concrete facts known to the nondomiciliary that should have alerted it" to the possibility of being brought before a court in [] New York'" is baseless given that Toptal has demonstrated myriad reasons Machi knew she could be haled into court here. *See* Mot. at 14 (quoting *Sullivan v. Jersey Strong Licensing LLC*, 2019 WL 3066492, *4 (S.D.N.Y. July 12, 2019)). Moreover, *Sullivan* has no applicability here because the plaintiff's sole allegation of jurisdiction was that the defendant's website was "accessible in New York and across the United States," not an ongoing employment relationship with a New York-based company and its New York-based executives.

actions from its New York headquarters. *E.g.*, AC ¶¶ 11, 14-17, 22-23.[11] Second, the New York-centered wrongful actions of Andela's New York-based executives, who collaborated with Machi in the scheme to steal from Toptal, can be imputed to Machi (herself an Andela executive) for purposes of subjecting her to personal jurisdiction in New York. *See* AC ¶¶ 10-11, 60-64, 67, 171-79, 225-38; *Fat Brands*, 75 F.4th at 126; *Reeves v. Phillips*, 54 A.D.2d 854, 855 (1st Dept. 1976).

### D.    Exercise Of Personal Jurisdiction Over Machi Comports With Due Process

Although Machi declined to challenge personal jurisdiction on due process grounds, it is nevertheless satisfied here because Toptal has established that New York's long-arm statute is met. *Jimenez*, 2021 WL 2941916, at *3 ("[B]ecause the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute, the minimum contacts and reasonableness requirements of due process have similarly been met."). Moreover, because Machi's employment agreement and contacts with Andela confirm that she was to be based on of Andela's New York office, "it cannot be said that it would be unforeseeable for [her] to be haled into court in [New York], at least regarding [Andela's] business." *Polygon Glob. Partners*, 2021 WL 2117397, at *6.

### E.    In Any Event, The Court Should Allow Toptal To Complete Jurisdictional Discovery

If this Court does not find that the facts currently available to Toptal establish sufficient contacts to subject Machi to personal jurisdiction, this Court should grant Plaintiff leave to depose Machi and others with knowledge of her role at Andela and connection to New York.

---

[11] Although Machi tellingly and conveniently does not recall what was discussed at these in-person meetings in New York, Machi Decl. ¶ 20, it is wholly implausible to believe that Toptal was *not* discussed given the apparent reason for Machi's hiring, and Andela's keen interest in immediately having Machi divulge what she knew about how *Toptal* worked within her first 30 days *at Andela. See supra* Section I.A; *DiStefano v. Carozzi N. Am., Inc*., 286 F.3d 81, 84 (2d Cir. 2001) (for personal jurisdiction determinations, courts "construe the pleadings and affidavits in the light most favorable to [the plaintiff], resolving all doubts in [its] favor.").

Jurisdictional discovery is appropriately granted where a plaintiff has "made a sufficient start toward establishing personal jurisdiction." *Uebler v. Boss Media, AB*, 363 F. Supp. 2d 499, 507 (E.D.N.Y. 2005). Further, discovery is appropriate even in the absence of a *prima facie* showing as to jurisdiction. *Id.* Toptal has made more than a sufficient start to establishing personal jurisdiction. At the very least, if there are remaining genuine issues of jurisdictional fact, including the substance of Machi's discussions with Andela executives in New York, as well as Machi's knowledge of Andela's New York presence and the nature and scope of that presence during the relevant period, depositions will develop these facts to firmly establish New York jurisdiction.

## II.    MACHI'S RULE 12(B)(6) MOTION FAILS

Machi's Rule 12(b)(6) Motion to Dismiss Toptal's fifth cause of action for breach of the non-solicitation, non-competition, and confidentiality provisions in the PIIA hinges entirely on her belief that California law should apply to this claim against her.[12] Mot. at 16-17. Machi further contends that the PIIA is unenforceable, again under California law, because it "contains so many void and unconscionable provisions that they are collectively unenforceable." *Id.* at 17-20.[13] But Machi's California-law arguments are directly contradicted by New York choice-of-law principles and the PIIA's language. Delaware law governs Toptal's claim for breach of the PIIA, and Machi makes no attempt to argue that Toptal's claim fails under that governing law.

---

[12] It is wholly irrelevant that "California law applies to the Offer Letter." Mot. at 16. The offer letter provides that California law will apply to "[t]he terms of this letter agreement and the resolution of any disputes as to the meaning, affect, performance or validity of this letter agreement or arising out of, related to, or in any way connected with, this letter agreement, [her] employment with the Company or any other relationship between you and the Company (*except for the PIIA and our relationship under and any of the subject matter of the PIIA*)[.]" ECF No. 17-3 at 4 (emphasis in original). Toptal's fifth cause of action is based on the PIIA, not the offer letter.

[13] Machi has not moved to dismiss Toptal's second, third, and fourth causes of action for misappropriation of trade secrets, unfair competition, and violation of the DTSA for failure to state a claim. It is unclear if she is moving to dismiss the fifth cause of action insofar as it seeks damages for her breach of the PIIA's confidentiality provisions. *See* AC ¶ 322 (alleging breach by her "improperly using and disclosing Toptal's trade secrets and confidential information" to Andela). California courts would permit the foregoing claims (*e.g.*, *Bemis Co. v. Summers*, 2019 WL 1004853, at *3 (E.D. Cal. Feb. 28, 2019)), and Machi sets forth no basis warranting their dismissal.

Machi contends that because she resided in California during some of the period in which she was employed by Toptal, the Court should simply apply California substantive law and California's choice-of-law rules contained in Cal. Lab. Code § 925.  Mot. at 16-17.  Machi is wrong.  This Court is bound to apply New York's choice-of-law principles, not California's, which call for the application of Delaware substantive law to the PIIA, not California.  *See, e.g.*, *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) ("[A] federal court . . . applies the choice of law rules of the forum state.").  New York's choice-of-law rules are clear:  "[C]ourts will generally enforce choice-of-law clauses . . . because contracts should be interpreted so as to effectuate the parties' intent."  *Id.* (quoting *Ministers & Missionaries Benefit Bd. V. Snow*, 26 N.Y.3d 466, 47 (2015)).  Courts in New York "should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract."  *Willis v. Herriott*, 550 F. Supp. 3d 68, 91 (S.D.N.Y. 2021).

The PIIA provides that "[a]ny dispute in the meaning, effect or validity of this Agreement shall be resolved in accordance with the laws of the State of Delaware without regard to the conflict of laws provisions thereof."[14]  ECF No. 17-3 at 9 § 12.  There is no reference to California law in the PIIA, at all.  Under New York's choice-of-law rules, Delaware law thus applies to Toptal's claim for breach of the PIIA.  *E.g.*, *Willis*, 550 F. Supp. 3d at 91-96 (rejecting employee's argument that Cal. Lab. Code § 925 applies in a New York court where the agreement at issue contained a New York choice-of-law provision, even though another agreement between the parties provided

---

[14] A simple, cursory review of the PIIA reveals its single reference to Washington law to be an inadvertent scrivener's error.  The same choice-of-law provision begins by stating Delaware law applies.  *See* ECF No. 17-3 at 9 § 12.  Neither Machi nor Toptal have any relationship to Washington, while Toptal is organized under the laws of Delaware.  Therefore, the Court can reform the contract containing an obvious scrivener's error that harms no one, *Wells Fargo Bank N.A. v. Sovereign Bank, N.A.*, 44 F. Supp. 3d 394, 407-08 (S.D.N.Y. 2014), and may even presume a choice-of-law provision is a mistake if its effect would be to invalidate an express portion of the PIIA.  *See Eli Lilly do Brasil, Ltda v. Fed. Express Corp.*, 502 F.3d 78, 82 (2d Cir. 2007).

for California law for other disputes).

"New York courts will only disregard clear choice-of-law provisions upon a showing that: (1) the chosen state has no reasonable connection to the parties or the contract, (2) the agreement was obtained through fraud, or (3) the chosen state's law violates a fundamental public policy of New York." *DarkPulse, Inc. v. Crown Bridge Partners LLC*, 2023 WL 6386006, at *4 (S.D.N.Y. Sep. 29, 2023). Indeed, "the courts of New York have refused to consider the public policy of foreign states—including California—to overturn an otherwise valid contractual choice of law provision." *Willis*, 550 F. Supp. 3d. at 92.

Machi does not argue that the agreement was obtained through fraud, nor could she.[15] Moreover, the Delaware choice-of-law provision bears a reasonable relationship to the employment relationship between Machi and Toptal, given that Toptal is organized under the laws of Delaware. AC ¶ 18. "The relevant inquiry is not . . . whether the selected state is the state with the greatest number of connections to the parties or the transaction; rather, it is whether the relationship to the selected state is 'reasonable.'" *Axos Bank v. 64-03 Realty LLC*, 2024 WL 1435971, at *10 (E.D.N.Y. Apr. 3, 2024). "[M]ost courts deem[] one party's incorporation in the state of the parties' chosen law sufficient for purposes of the 'reasonable relationship' test." *Willis*, 550 F. Supp. 3d at 95 (quoting *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 541 (S.D.N.Y. 2020)). Delaware law easily meets the reasonableness test.

Nor does the enforcement of a Delaware non-solicitation provision violate New York public policy—in fact, New York and Delaware have similar policies around enforcing reasonable post-employment restrictive covenants. *See TBA Glob., LLC v. Proscenium Events, LLC*, 114

---

[15] Machi makes a half-hearted argument that "the PIIA attempts to coerce Machi into giving up the substantive protections of California law with respect to controversies arising out of her employment in California." Mot. at 17. But Machi offers no plausible explanation for how voluntarily signing a contract that clearly provides for a law other than California's somehow amounts to coercion.

A.D.3d 571, 572 (1st Dept. 2014) ("Delaware law does not differ significantly from New York law as to the test for enforceability" for non-competition agreements).  Machi's California-dependent argument is thus beside the point, as numerous courts in this district have held.  *E.g.*, *Willis*, 550 F. Supp. 3d at 92-93 ("the question is not whether Delaware law would violate *California's* fundamental public policy, but rather whether it would violate *New York's*") (quoting *Capstone Logistics Holdings, Inc. v. Navarrete*, 2018 WL 6786338, at *22 (S.D.N.Y. Oct. 25, 2018)) (emphasis in original).  New York public policy generally allows for the enforcement of post-employment restrictive covenants like those in the PIIA, and Machi has not even argued that the PIIA's provisions are unenforceable under Delaware law.

Machi also argues that the PIIA's provisions are "void" and/or "unconscionable."  Mot. at 17-20.  Machi cites no case or law suggesting the PIIA's provisions are "void" or "unconscionable" under ***Delaware*** law.  She again relies solely on California law, citing a single case, *Peters v. Guaranteed Rate, Inc.*, 2024 WL 2925309, at *1 (N.D. Cal. June 10, 2024).  However, *Peters* is entirely inapplicable here because it involves the application of California law by a California court, which, **unlike this Court**, is required apply California choice-of-law rules.  Machi's secondary and conclusory argument that the PIIA "contains so many void and unconscionable provisions that they are collectively unenforceable" is also predicated entirely on inapplicable California statutes and *Peters*, Mot. at 17-20, none of which apply here.[16]  Machi does not even try to argue that the PIIA is voided or deemed unconscionable under Delaware law—nor could she.  *See generally Capstone*, 2018 WL 6786338, at *26 (discussing the enforceability of non-solicitation provisions under Delaware law and granting a preliminary injunction preventing the

---

[16] Machi offers little explanation regarding which Agreement provisions she views as "void and unconscionable" or *why* she believes them to be "void and unconscionable."  Machi's repeated insistence that the provisions are unenforceable, without support or adequate explanation, does not make it so.

defendants from soliciting the plaintiffs' employees).  Therefore, the Amended Complaint states cognizable claims for breach of the PIIA against Machi, and Machi's Rule 12(b)(6) motion should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion in its entirety.

Dated: August 22, 2024

CARTER LEDYARD & MILBURN LLP

By: _____
Jacob H. Nemon
28 Liberty Street, 41st Floor
New York, New York 10005
Tel.: (212) 732-3200
Email: nemon@clm.com

LATHAM & WATKINS LLP
Kevin M. McDonough
Megan A. Behrman
1271 Avenue of the Americas
New York, New York 10020
Tel.: (212) 906-1200
Email: kevin.mcdonough@lw.com
       megan.behrman@lw.com

*Attorneys for Plaintiff Toptal, LLC*
